# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY CARLSON, individually, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-590 |
| ) | |
| BERKLEY ACCIDENT AND HEALTH, ) | Judge Feinerman |
| LLC, ) | |
| ) | |
| Defendant. ) | |

## AMENDED COMPLAINT

Plaintiff Amy Carlson ("Plaintiff" or "Carlson"), by her undersigned counsel, files this Amended Complaint against Defendant Berkley Accident and Health, LLC, ("Defendant" or "Berkley") for employment discrimination alleges as follows:

### PARTIES

1. Carlson is an individual and was at all relevant times a resident of Cook County, Illinois.

2. Carlson was employed by Defendant in February of 2014, and at all relevant times until Carlson's employment was constructively terminated based on public policy violations by Defendant in November of 2017.

3. Berkley is an insurance company with its principal office located in the state of New Jersey. Berkley has offices located in Chicago, Illinois.

### PROCEDURAL REQUIREMENTS

4. Carlson fulfilled all conditions precedent to the institution of this action under the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.

5. Carlson has received a "Right to Sue" letter in this action.

6. Carlson has timely filed this lawsuit within 90 days of receipt of her "Right to Sue" letter.

1

## JURISDICTION AND VENUE

7. This case was initially filed in Cook County, Illinois.

8. Defendant removed this case pursuant to 28 U.S.C. §1441(a) on the grounds that this Court has jurisdiction under 28 U.S.C. §1332.

## FACTS REGARDING CARLSON'S EMPLOYMENT WITH DEFENDANT

9. Carlson was employed as a sales representative at Berkley from February of 2014 until she was forced to abandon her job due to Berkley's improper business practices in November of 2017.

10. Carlson was qualified for her job and was adequately performing the duties of her job at the time of her departure.

11. At the time of the constructive discharge due to the violations of public policy, Carlson was a female over the age of forty (40) years old.

12. Carlson was paid substantially less than her similarly situated male peers in terms of salary, bonus and stock options.

13. Carlson's work performance was the same as or better than the performance of the males who were paid more than she was.

14. Carlson was forced to resign by Defendant following communications she had with Defendant's compliance department regarding concerning business practices that Defendant continues to engage in.

15. Carlson's problems with Defendant are well-documented, wide-ranging, and all remain unresolved. Throughout Carlson's employment Defendant:

- assigned accounts in her territory to men without justification;

- denied her and her female subordinate the ability to sell the same products as men;

- failed to provide her with appropriate and proportionate back-office and underwriting support;

- brushed aside and failed to remedy sexual harassment, gender discrimination, pay discrimination and account steering claims that Carlson made to Defendant;

- passed Carlson over for a National Sales Manager position for a less qualified candidate;

- denied her access to software and systems that would enable her to more effectively and efficiently to do her job, although her male peers were granted access to the information she repeatedly sought to access; and

- ignored Carlson when she reported regulatory issues regarding the Defendant's Form 5500 reporting and contractual breaches in the Defendant's practice of inflating premiums by building in added charges for overrides to the client's premium – against the expressed language in producer contracts that Carlson helped secure for the with Defendant.

16. As an example of Defendant's account steering and diverting accounts that should have been credited to Carlson to male employees, one only needs to look at the Stan Burt/Horton relationship in Indiana. Based on clearly defined assigned territorial boundaries, these accounts were clearly within Carlson's territory.

17. However, due to a male underwriter's personal ties to the client, the accounts were assigned to a male underwriter and not Carlson.

18. Defendant's usual and standard practice in situations like this, particularly when male sales representatives are involved, is to pay the regional sales representative, in this case, Carlson, compensation for all renewal and new business production.

3

19. However, here, the Defendant chose to bypass Carlson and deny her any credit for these sales, thus reducing her compensation.

20. Towards the end of her tenure with Defendant, Carlson voiced concerns to Defendant regarding how override payments to producers were misrepresented, calculated and concealed.

21. It came to Ms. Carlson's attention that Defendant had been overcharging customers for overrides and misrepresenting the information on its Form 5500 filings.

22. Rather than "baking in" the overrides in the quoted rates, Defendant was, and presumably still is, increasing pricing and charging customers inflated premium amounts.

23. Additionally, Carlson discovered Defendant was adding additional costs (expense loads that included a profit component) to the calculation when illegally inflating their premiums to pay the producer overrides.

24. For example, if a producer had entered an agreement with Defendant to receive a 5% override payment on all bound premium, the client's costs should not be increased. An override by definition should not change a rate. It should be paid from the insurance companies general expense account. Defendant not only increased the rates by the percentage it was paying the producers for overrides, they compounded the inflated rates by adding an expense load that included a profit margin. For example, a 5% override payment to a producer, ended up costing policyholder an inflated rate close to 107% to 108% of what they were contractually and legally allowed to charge.

25. A client that should be paying rates equal to a policyholder that did not have a broker receiving an override were paying an additional 7% of premium.

26. This practice was a clear violation of the Defendant's contracts with clients, it violates several state rate filing requirements and goes against standard industry practices.

27. This egregious behavior is compounded by the fact that Defendant has to hide these increases on its form 5500 filings with the United States Government. Carlson has reported this conduct to the appropriate governmental agencies.

28. Additionally, Ms. Carlson discussed the increased rates as a result of the practice described above with a broker with whom she has a close relationship. The broker told Carlson that the price increases discussed above unquestionably cost Carlson and the Company a significant amount of business.

29. Carlson attempted to remedy this issue internally by reporting the matter to the Defendant's management. Her report was met with disinterest.

30. Carlson had no choice but to leave her employment with the Defendant to prevent herself from being complicit in Defendant's misdeed.

31. Following Carlson's termination, Defendant failed to pay Carlson her accrued but unused paid time off and other earned wages and benefits, including commissions owed to Carlson for sales within her territory.

## COUNT I

## DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

(Gender Discrimination)

32. Plaintiff restates and re-alleges the prior paragraphs as though fully set forth herein.

33. Count II of the Complaint is brought under the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq., which prohibits discrimination on the basis of gender.

34. Berkley is an employer as defined by the Illinois Human Rights Act and is therefore subject to its provisions.

35. Paying similarly situated male employees more than similarly-situated female employees is discriminatory as unequal pay under the Illinois Human Rights Act.

36. Carlson at all relevant times was a female employee of Berkley.

37. During Carlson's tenure with Berkley, she was paid substantially less than her similarly situated male peers.

38. Berkley paid Carlson less than at least her male peers based on her gender in violation of the Illinois Human Rights Act.

WHEREFORE, Plaintiff respectfully asks the Court to grant the following relief:

    A.    Find and adjudicate that Berkley violated the Illinois Human Rights Act when it paid Carlson less than her similarly situated male peers and younger peers and that Berkley is therefore liable to Carlson for all injuries suffered;

    B.  Award Carlson damages from Berkley in an amount in excess of $500,000

    C.  Award Carlson reasonable attorneys' fees and costs of this suit; and

    D.  Such other relief as this Court deems appropriate under the circumstances.

## COUNT II

## ILLINOIS EQUAL PAY ACT

(820 ILCS 112/1, et seq.)

39. Plaintiff restates and re-alleges the prior paragraphs as though fully set forth herein.

40. The defendant has discriminated against the Plaintiff in violation of the Illinois Equal Pay Act, 820 ILCS 112/, et seq. by subjecting her to unequal pay on the basis of sex.

41. Defendant has discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated male employees who performed jobs that required equal skill, effort, and responsibility, and which were performed under similar working conditions.

42. Defendant also discriminated by subjecting Carlson to less pay and benefits in violation of the Illinois Equal Pay Act.

43. As a result of Defendant's conduct alleged herein and Defendant's willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer harm, including but not limited to, lost wages, lost benefits, and other financial loss.

WHEREFORE, Plaintiff respectfully asks the Court to grant the following relief:

A. Find and adjudicate that Berkley discriminated against Carlson in violation of the Illinois Equal Pay Act and award Carlson the entire amount of underpayment, interest, costs, reasonable attorneys' fees and other statutory penalties or relief as may be allowed by the Court pursuant to 820 ILCS 112/30; and

B. For such other relief as the Court deems just and proper.

## COUNT III

## ILLINOIS WAGE PAYMENT AND COLLECTION ACT

(820 ILCS 115, et seq.)

44. Plaintiff restates and re-alleges the prior paragraphs as though fully set forth herein.

45. Plaintiff alleges that defendant failed to pay Plaintiff her rightfully earned final compensation, in violation of 820 ILCS 115/14.

46. As a result of Defendant's willful retaliation, Plaintiff has suffered and continues to suffer materially adverse harm, including but not limited to lost wages and benefits, diminished employment opportunities, and humiliation, embarrassment, emotional and physical distress, and mental anguish.

47. Plaintiff has suffered and continues to suffer materially adverse harm, including but not limited to lost wages and benefits, diminished employment opportunities, and humiliation, embarrassment, emotional and physical distress, and mental anguish

WHEREFORE, Plaintiff respectfully asks the Court to grant the following relief:

A.	Find and adjudicate that Berkley discriminated against Carlson in violation of the Illinois Wage Payment and Collection Act and award Carlson the entire amount of underpayment, interest, costs, reasonable attorneys' fees, and other statutory penalties or relief as may be allowed by the Court pursuant to 820 ILCS 115, et seq.; and

B.	For such other relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated: April 20, 2020

*/s/ John Liston*

John M. Liston
HR Law Counsel
50 South Main Street, Suite 200
Naperville, IL 60540
Phone: 847-528-5024
Email: john@hrlawcounsel.com